'(No. 28309.—

MAX LEVINSON, Appellant, *vs.* SPECTOR MOTOR SERVICE, Appellee.

*Opinion filed January 17, 1945—Rehearing denied March 19, 1945.*

YALE & YALE, (HARRY L. YALE, of counsel,) both of Chicago, for appellant.

GOLDEN & GOLDEN, (DAVID AXELROD, and HARRY J. LURIE, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal on a certificate of importance from a judgment of the Appellate Court for the First District. Appellant, Max Levinson, brought an action in the municipal court of Chicago, against appellee, Spector Motor Service, a corporation, to recover overtime compensation and an additional equal amount of damages, pursuant to sections 7 and 16(b), of the Fair Labor Standards Act

of 1938. (52 U. S. Stat. 1060; Title 29 U.S.C.A. sections 201-219.) We shall hereinafter refer to the appellant as plaintiff and to the appellee as defendant.

From October 1, 1939, to October 6, 1941, plaintiff was employed by defendant, a Missouri corporation, licensed in Illinois and engaged in interstate commerce as a motor carrier of freight. Section 7 of said act, which it is contended was violated, provides as follows: "(a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—(1) for a workweek longer than forty-four hours during the first year from the effective date of this section, (2) for a workweek longer than forty-two hours during the second year from such date, or (3) for a workweek longer than forty hours after the expiration of the second year from such date,—unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

The aforesaid provisions of the act became effective October 24, 1938, and plaintiff claims that he worked 87 hours per week for the period from October 1, 1940, to October 6, 1941, during which time defendant violated section 7 of the act by refusing to pay him time and a half for all hours in excess of 42 hours per week during the period from October 1 to October 24, 1940, and for all hours in excess of 40 hours per week from October 25, 1940, to October 6, 1941, less one week's vacation.

Plaintiff was employed by the Spector Motor Service at its terminal located at 600 West Twenty-fifth street, in the city of Chicago, and checked, unloaded and received inbound freight. The inbound receiving platform is about a half-block long, connected with the office, and the trucks coming in back up against the terminal. The work of unloading is performed by gangs of three or four men

together. One is a checker, one is an unloader and one is a wheeler. The checker goes into the office, asks for bills to correspond with the incoming load, and, after securing the bills from the terminal manager, his gang starts unloading freight on the terminal. The duties require the checker to check the freight, the sorter sorts it out, and the wheeler puts the freight in separate sections in the terminal and is told by the checker where to put it. The outgoing freight was operated in a similar manner but was carried on mostly in the nighttime. Plaintiff, as checker, had supervision of the others working with him, was in contact with the office, and checked payrolls, as well as shipment bills from various States named thereon against shipment freight loads, to see that they corresponded and tallied correctly.

Defendant contends that plaintiff has no right to bring any action under the Fair Labor Standards Act because the nature of his employment specifically exempts him from its provisions; that it is engaged in the business of interstate freight by motor vehicle and that it is under the specific jurisdiction of the Interstate Commerce Commission by virtue of the United States Motor Carrier Act of 1935; (49 U. S. Stat. 543; Title 49 U.S.C.A. sec. 304;) that plaintiff worked as a dockman, loader and dock foreman, and during all of said time performed no duties other than those inherent to, directly connected with and incidental to, the safety of the vehicles and the cargo carried thereby and the persons connected therewith or who might come in contact with said cargo, vehicles, or either or both of them; and that plaintiff does not come under the provisions of the Fair Labor Standards Act for the reason that employment of this nature is specifically exempted thereby.

The trial court found the plaintiff worked 87 hours per week during the period for which this suit was brought and that the major portion of the work performed by him

during that period did not affect the safety of defendant's operations and that plaintiff was not exempted from the provisions of the act. It is contended by defendant that this finding that the plaintiff is not exempted is erroneous as a matter of law and is against the manifest weight of the evidence. It is also contended by defendant that the amount of the judgment entered exceeded the court's jurisdiction in plaintiff's fourth-class action. In this respect the court found that plaintiff worked 87 hours per week from October 25, 1940, to October 6, 1941, which is 48 4/7 weeks which, under section 7(a)(3), were limited to 40 hours per week; that the salary of $150 per month divided by the number of hours worked and time and one-half for overtime, in violation of the provisions of the act, amounted to $487.44, and also found that, under the provisions of the act, plaintiff was entitled to a like sum of $487.44, as liquidated damages, and under further provisions of the act, entitled to attorney's fees in the sum of $175, and entered judgment for $1149.88, accordingly.

The Appellate Court held that plaintiff was exempted from section 7 of the Fair Labor Standards Act for the reason that some part of his workweek was devoted to the direction and supervision of the loading of interstate motor-vehicle carriers and that some of his duties substantially affected the safety of operation. The correctness of the Appellate Court's holding that the true determinant is whether an employee performs any duties which substantially affect the safety of operation, rather than whether the duties affecting safety are substantial, is the principal question before this court for solution. At this point it might be said that the trial court held as a matter of law, and found as a matter of fact, that the major portion of plaintiff's work did not affect the safety of defendant's operations within the meaning of section 204 of the Motor Carrier Act of 1935, and that plaintiff was not, therefore, exempted by virtue of said section 13(b), of the Fair

Labor Standards Act of 1938, while the Appellate Court held that some part of plaintiff's work was devoted to the direction and supervision of loading of interstate motor freight carriers, that there was no question that the loaders in his gang were exempted from section 7 of the Fair Labor Standards Act because of the manner in which their work affected the safety of the operation of defendant's motor vehicles and that the duties of plaintiff, who planned and directed the loading, affected that safety. The Appellate Court further held that the true determinant is whether an employee performs any duties which substantially affect the safety of operation rather than whether the duties affecting safety are substantial, and that the finding of the lower court that plaintiff is not exempted was erroneous as a matter of law.

It is urged by plaintiff that the Appellate Court's determination that an employee is exempt who performs "any" duties which substantially affect the safety of operation, as distinguished from performing substantial duties affecting such safety, is not supported by any ruling or court decision and is not the law. This, of course, presents the question as to what is, as a matter of law, the correct determinant, considering the purpose of the Motor Carrier Act.

Much difficulty has been encountered by the courts and the Interstate Commerce Commission as to the construction to be given section 204 of the Motor Carrier Act of 1935. (49 U. S. Stat. 543, 49 U.S.C.A. par. 304.) That section empowers the commission to regulate the qualifications and hours of service of employees whose activities affect the safety of operation. (*United States* v. *American Trucking Ass'n*, 310 U. S. 534-553, 60 S. Ct. 1059-1067, 84 L. ed. 1055.) Section 13(b) of the Fair Labor Standards Act provides, "The provisions of section 207 of this title shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power

to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49: or (2) any employee of an employer subject to the provisions of sections 1-27 of Title 49." It can thus be seen that section 13(b) exempts from the provisions of section 7, any employee subject to the jurisdiction of the Interstate Commerce Commission under section 204 of the Motor Carrier Act.

In Ex Parte No. MC-2, 28 M.C.C. 125, the commission interpreted the term "safety of operation," used in that case, to include employees who devote a substantial part of their time to activities which directly affect safety of operation. At page 131, the commission stated, "We therefore conclude that under said section 204(a) we have power to establish qualifications and maximum hours of service with respect only to employees who devote a substantial part of their time to activities which directly affect safety of operation. Our task is thus narrowed to determining which employees of common and contract carriers and of private carriers of property by motor vehicle, engaged in interstate or foreign commerce, fall within that category." It was held in the *American Trucking Ass'n case* that the commission and the wage and hour division have both interpreted section 204(a) as relating solely to safety of operation and that such interpretations are entitled to great weight. The court in that case, after referring to section 204(a) of the Motor Carrier Act and section 13(b) of the Fair Labor Standards Act which provided, "The provisions of section 7 shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204, (Title 49, par. 304,) of the Motor Carrier Act of 1935," said: "This exemption brought sharply into focus the coverage of employees by Motor Carrier Act, Section 204(a). Clerical, storage and other nontranspor-

tation workers are under this or the Fair Labor Standards Act, dependent upon the sweep of the word employee in this act. The Commission again examined.the question of its jurisdiction and in Ex Parte No. MC-28 again reached the conclusion that its power under 'section 204(a)(1) and (2) is limited to prescribing qualifications and maximum hours of service for those employees * * * whose activities affect the safety of operation.' It added: 'The provisions of section 202 evince a clear intent of Congress to limit our jurisdiction to regulating the motor-carrier industry as a part of the transportation system of the nation.' "

We have analyzed the cases as to the interpretation and construction to be given the Motor Carrier Act as to employees coming thereunder by reason of their employment affecting safety operations and are of the opinion that the true determinant is not whether an employee performs any duties which substantially affect the safety of operations, but whether the duties affecting the safety are substantial. This brings us to the question of the effect of the Appellate Court's decision.

Plaintiff's contention is that the Appellate Court erred in disregarding the specific findings of the trial court that the major portion of plaintiff's duties did not affect safety of operation; that the findings of the court cannot be disregarded or disturbed unless against the manifest weight of the evidence; that where the evidence is merely conflicting the Appellate tribunal should not substitute its judgment as to the credibility of witnesses for that of the jury or the trial court. Plaintiff, therefore, insists that this court reverse the judgment of the Appellate Court and affirm the findings and judgment of the trial court. We do not think the Appellate Court substituted its judgment, as to the credibility of witnesses, but only exercised its authority under section 89 of the Civil Practice Act, to make a final determination of the case different from that

of the trial court. (Ill. Rev. Stat. 1943, chap. 110, par. 213.) In nonjury cases, such as this, the Appellate Court may make findings of fact different from the findings of the trial court. In the case of *Ebbert* v. *Metropolitan Life Ins. Co.* 369 Ill. 306, this court, at page 310, said: "It is appellant's contention that, since the evidence was conflicting, it was the province of the trial judge to weigh the evidence, and that, by invading that province and reversing the judgment, the Appellate Court committed an error of law. However, this contention cannot be sustained in view of the contrary language of section 89 of the Civil Practice act. (Ill. Rev. Stat. 1937, chap. 110, par. 213.)" Plaintiff's contention that this court should affirm the findings and judgment of the trial court in that respect is not tenable.

Defendant contends the Appellate Court has exercised its statutory authority making final decision of the case and that the decision of the Appellate Court should therefore be affirmed. This presents the question as to whether or not the facts found by the Appellate Court sufficiently appear in the opinion or in the final judgment, or, from an examination of the two, to support the judgment as entered. We think the question of fact to be properly determined in this case is whether or not a substantial part of plaintiff's work affects safety of operation of motor vehicles, and that this question of fact controls this case. If it be determined from the evidentiary facts that plaintiff, in a substantial part of his work, was engaged in safety of operation of motor vehicles, or the cargo thereof, he would be exempted from the Fair Labor Standards Act, as a matter of law.

The Appellate Court found that the loaders in appellant's gang were exempted from section 7 of the Fair Labor Standards Act and that appellant therefore came within the exemption because he planned and directed the loading effecting the safety of operation.

The substantial effect of the comment of the Appellate Court was to the effect that the quantity of plaintiff's activity was not the true test of exemption from the Fair Labor Standards Act, yet said court did hold the appellant was in the same position as the loaders.

The Appellate Court may be in error in the reasons given for its judgment, but, under the facts as found by the court, the employee came within the same exemption as loaders, dockmen and helpers.

For the reason aforesaid, the judgment of the Appellate Court is affirmed.          *Judgment affirmed.*