Jess C. Shinpaugh, Plaintiff-Appellee, v. Midwest Life Insurance Co., an Insurance Corporation, Defendant-Appellant.

Gen. No. 61–M–2.

Fourth District.

October 5, 1961.

Green and Hoagland, of Alton (James K. Almeter, of counsel) for appellant.

Ralph T. Smith, of Alton, for appellee.

HOFFMAN, PRESIDING JUSTICE.

This case was brought by an agent of the defendant life insurance company to recover as the named beneficiary on a credit life insurance policy issued by the defendant on the life of Esther M. Harting. The policy had been issued pursuant to an application made through the agency of the plaintiff.

The trial court, sitting without a jury, entered judgment for the plaintiff in the sum of $3,000, being the face amount of the policy.

The policy insured the payment of the balance due plaintiff on an alleged indebtedness owed him by Esther M. Harting, the named insured. The date of issue was May 29, 1958 and the term was 12 months. The insured died approximately 5 months after the policy was issued.

Plaintiff had a written contract with defendant company under the terms of which he was appointed specifically for the purpose of soliciting insurance on the lives of debtors "appearing to be in sound health and actively employed." The agency contract further provided that "No insurance shall be written on a debtor except at the time the indebtedness occurs."

The defendant company has alleged the following three defenses: (1) that contrary to the terms of the policy, the debt owed was not incurred on the date of the application for the insurance; (2) that the plaintiff agent failed to inform defendant of the actual condition of health of Esther M. Harting although he had

209

knowledge of her illness, and, (3) that the signature of the insured on the application was forged.

Plaintiff and Esther M. Harting had been social acquaintances for over 35 years. He testified that he saw her about once a week during the last year of her life. From 1920 on through the years, he advanced monies to her for herself and her mother. Although he had not kept an exact account, he thought that the total accumulation of advances prior to May 1, 1958 would amount to about $4,000.

For a number of years, Esther M. Harting was employed at a clothing store in Alton, Illinois. In July of 1958, she left her employment on a leave of absence because of her ill health. At that time, she was 60 years old. Being a Christian Scientist, she did not consult a doctor for her condition until July 18, 1958. The doctor, who was called by the defendant, diagnosed her ailment as advanced carcinoma of the face and throat, and stated that the external condition of this sickness must have been progressing for a period of from 6 to 12 months prior to July, 1958.

Plaintiff, who was his only witness, admitted that he knew of the "sore" on the face of Mrs. Harting a month or six weeks before she quit her job in July. He further testified that "she was grieving herself to death after her mother died in 1957."

Fellow employees, called by the defendant, testified that they knew of the sore on her face for many months before she left in July of 1958. They described it as it appeared to them during the preceding Christmas season. They said it was "terrible," "an open sore," and was "easily discernible." One witness said she begged Mrs. Harting to go to a doctor, but that she wouldn't. This witness further stated that she was in such poor health that she could hardly "totter" when she got off the elevator.

On May 1, 1958, a note was signed by Esther M. Harting in the sum of $3,350, due 6 months after date

and payable to the order of plaintiff. This was intended to state the amount due plaintiff for all the advances he had previously made. Four weeks later, on May 29, the application for the insurance here involved was made in the office of plaintiff. Portions of the application including the name of the beneficiary, the amount of insurance and term were typed in, apparently by someone in plaintiff's office. The name and address of insured and her age were written with pen. The question, "Are you in good health to the best of your knowledge?" was not answered. The form was very short and asked only the above questions.

This appeal presents the basic question of whether, under these circumstances, the plaintiff agent may benefit from a policy he procured from his principal to secure the payment of a long standing indebtedness due him from a close friend who died shortly after the policy was issued from a condition existing at the time the application for the insurance was made.

We cannot make any conclusion from the evidence in this record but that the plaintiff was well aware of facts which he failed to disclose to his principal. These facts included the condition of health of the insured and the long standing nature of plaintiff's personal loans to Mrs. Harting. Plaintiff knew any insured must be in apparent good health and that the inception of the debt covered must be concurrent with the application. His contract so stipulated.

 Justice Daily has very adequately summarized the policy of our law in cases dealing with the loyalty that an agent owes his principal. In the case of Blanchard v. Lewis, 414 Ill 515, 524, 112 NE2d 167, 172, Justice Daily says:

> "The law of agency and the declared public policy of this State strictly require honesty and loyalty to the interests of the principal on the part of an agent. Steinmetz v. Kern, 375 Ill 616, 32 NE2d

151; Rieger v. Brandt, 329 Ill 21, 160 NE 130. This obligation prohibits an agent from acquiring personal interests adverse to those of his principal and from dealing independently of the interests of his principal to his personal gain in the subject matter of the agency, on the sound grounds that such activities will necessarily tempt the agent to swerve from full adherence to his fiduciary obligations, to abandon the interests of his principal in favor of his own, and even to advance his personal ambitions to the detriment of his principal. Chicago Title & Trust Co. v. Schwartz, 339 Ill 184, 171 NE 169; Lerk v. McCabe, 349 Ill 348, 182 NE 388. The law is clear that such adverse interests or self-dealing will bar the agent from any recovery for his services unless the agent completely discloses the extent of the adversity of interest and the principal, having such information, consents thereto. Fox v. Simons, 251 Ill 316, 96 NE 233; Voorhees v. Campbell, 275 Ill 292, 114 NE 147. To enforce this principle of law, the law imposes upon the agent a burden of proving full honesty and loyalty, or, in the alternative, full disclosure and subsequent ratification by the principal, whenever any question relating to the faithfulness of the agent arises in an action brought by an agent against his principal. McCord v. Roberts, 334 Ill 233, 165 NE 624; Fox v. Simons, 251 Ill 316, 96 NE 233; Wadsworth v. Adams, 138 US 380, 11 S Ct 303, 34 L Ed 984; Beach v. Wilton, 244 Ill 413, 91 NE 492."

■ It is the duty of the courts to carefully scrutinize transactions wherein agents make themselves the recipients of beneficial contracts with their principals. And in such cases the burden of proof is upon the agent to establish that the transaction was fair and proceeded only after a full disclosure of facts to the principal.

■ An agent, in the exercise of good faith, is bound to keep his principal informed on all matters that may come to his knowledge pertaining to the subject matter of the agency. There is a want of good faith on the part of the agent towards his principal when he acts adversely to his principal's interest or when he conceals facts which react to his advantage.

■ We find that the evidence clearly establishes that plaintiff took advantage of his agency relationship with defendant and procured for himself, by virtue of this relationship, the insurance contract sued upon. We further find that, under the facts here presented, this contract was so inimical to the interests of the defendant that it would never have been consummated had plaintiff made a full disclosure of said facts to the defendant.

No good would be served by remanding this case for a new trial as there is no basis whatsoever for this plaintiff to recover under the facts presented by him. There was clearly a violation of that loyalty and duty to report which every agent owes to his principal. Combining that with the fact that this was an effort to personally protect himself, makes it undeniably clear in our minds that there was no justification at all to permit recovery by the plaintiff.

■ ■ The rule is well established that, even where there is a conflict in the facts, we may reverse without remanding when a jury is waived. Cereal Byproducts Co. v. Hall, 15 Ill2d 313, 155 NE2d 14; Ebbert v. Metropolitan Life Ins. Co., 369 Ill 306, 16 NE2d 749; Levinson v. Spector Motor Service, 389 Ill 466, 59 NE2d 817; Cromwell Paper Company v. Wellman, 23 Ill App2d 263, 162 NE2d 500.

Judgment reversed.

CULBERTSON and SCHEINEMAN, JJ., concur.