*In re* MARRIAGE OF MELANIE PALMER SUNKO, Petitioner-Appellee, and GERALD CHESTER SUNKO, Respondent-Appellant.

First District (1st Division) Nos. 1—89—3043, 1—90—0721 cons.

Opinion filed May 18, 1992.—Rehearing denied December 16, 1992.

Paul R. Jenen, of Wheeling, and Richard Gigante, of Chicago, for appellant.

Laser, Schostok, Kolman & Frank, of Chicago, for appellee.

JUSTICE MANNING delivered the opinion of the court:

Respondent, Gerald Chester Sunko, appeals from an order of the trial court wherein the court determined that: (1) the value of the marital residence was $220,000; (2) the fair rental value of the marital residence was $36,570; and (3) the petitioner was entitled to post-judgment interest of 9% per year on the marital property. On appeal respondent argues that the trial court abused its discretion in: (1) permitting further evidentiary proceedings in assessing the value of the marital residence; (2) in crediting petitioner with 100% of the fair rental value of the marital residence; and (3) in awarding petitioner post-judgment interest on her share of the marital property.

Respondent and petitioner Melanie Palmer Sunko were married on September 4, 1976. Respondent adopted petitioner's son and the family lived together in their Glencoe home. In 1979 petitioner filed a petition for divorce in the circuit court of Cook County. The court denied the petition on September 11, 1980. Petitioner appealed that decision, and the appellate court affirmed the trial court's order. Petitioner and the child subsequently relocated to the State of Texas, where she obtained a divorce from respondent on October 22, 1982. Respondent remained in the Glencoe residence and continued to pay the real estate taxes, insurance and mortgage. The Texas divorce decree awarded custody of the parties' son to petitioner, divided the marital property and provided for child support and attorney fees.

Petitioner registered the foreign judgment in Cook County, but the trial court vacated that judgment as to the division of marital property, child support and attorney fees.

On April 1, 1985, a trial was held on these three issues. Respondent testified that he was employed as a physician and earned a salary of $88,896. He testified that after the petitioner left the marital residence in 1980 he continued to reside there, paid the mortgage, insurance and real estate taxes. He testified that based on his inquiry to a former employee and the examination of newspapers and figures for comparable sales of homes in his area, the value of the marital home

in 1980 was $175,000. On cross-examination he stated that three weeks before the trial the home was appraised and he penciled in a figure of $250,000. Respondent explained that he wrote that amount without knowing what the actual appraised value was. Respondent testified that his interest in a Kemper profit sharing plan was $42,400 and that his interest in a pension plan was $16,478.

Petitioner testified that she left the Glencoe home in 1980 and that respondent continued to live there. She stated that she earned $20,000 annually as a research assistant at the University of Texas and had contributed $4,600 to the teacher's retirement fund. The parties entered into a stipulation, subject to cross-examination, as to the fair market value of the home. The only competent evidence of the value of the home was the testimony of respondent. He testified that the value of the marital home was $175,000. The parties also stipulated that the fair rental value of the home between October 22, 1982, and April 1, 1985, was $36,570.

Following a bench trial, the court determined that the marital home had a fair market value of $250,000 and equity of $101,809. The court awarded petitioner the 1962 Mercedes-Benz valued at $5,000 and awarded respondent the 1967 Mercedes-Benz valued at $2,000. The parties were each granted $9,382 from respondent's pension plan, and $21,200 each from respondent's profit sharing plan. The court granted respondent credit for his contribution of $74,724.27 towards the mortgage, real estate taxes and insurance of the marital residence. This amount was offset by 100% of the fair rental value of the home from October 22, 1982, through April 1, 1985, in the amount of $36,570. The court determined that petitioner's pension plan had no value.

Both parties appealed the trial court's decision. This court in a Rule 23 order (134 Ill. 2d R. 23) held that: (1) the trial court erred in determining that the value of the marital residence was $250,000; (2) there was no evidence in the record as to the fair rental value of the marital residence and that it was improper to offset respondent's contribution against his "rent free" use of the premises; and (3) the trial court erred in determining that petitioner's pension had no value. This court affirmed the trial court's decision in part and reversed and remanded the decision for further proceedings.

On remand the trial court allowed petitioner to introduce additional evidence establishing the value of the marital residence, as well as the fair rental value of the residence. The court then concluded that, based on the additional evidence, the marital residence had a value of $220,000 and a fair rental value of $36,570 for the period of

October, 1982, through July, 1985. The parties also stipulated that the marital portion of Melanie's pension had a value of $1,700. The court also awarded petitioner interest on the marital property she received.

Respondent first argues that the trial court abused its discretion by disregarding the Rule 23 order in this cause and permitting further evidentiary proceedings. Specifically, he contends that the court should not have allowed additional evidence of the value of the marital residence, nor offset his contributions in taxes, insurance and mortgage payments by the fair rental value of the home during the period from October 22, 1982, through July 1985.

■ When a reviewing court remands a case with instructions that are general in nature, the trial court is required to examine the appellate court's opinion and exercise its discretion in determining what further proceedings would be consistent with the opinion on remand. (*In re Marriage of Jones* (1989), 187 Ill. App. 3d 206, 543 N.E.2d 119.) In this regard, the trial court has the discretion to hear new evidence and to make an appropriate disposition of the case. See, *e.g., In re Marriage of Fuggiti* (1985), 130 Ill. App. 3d 190, 474 N.E.2d 386.

In this case, the appellate court remanded the cause to the trial court on the issue of the value of the marital residence. The appellate court did not give specific directions in its remand order, nor did it restrict the trial court from allowing additional evidence as to the value of the home. The appellate court simply determined that based on the evidence introduced at trial, it was error for the trial court to determine the value of the home was $250,000.

It is true that when a court remands a case without specific instructions, the trial court is required to examine the appellate court's opinion and exercise its discretion in determining what further proceedings would be consistent with the opinion on remand. (*In re Marriage of Jones* (1989), 187 Ill. App. 3d 206, 543 N.E.2d 119.) However, an additional evidentiary hearing is only necessary where extraordinary circumstances are present.

In *In re Marriage of Fuggiti* (1985), 130 Ill. App. 3d 190, 474 N.E.2d 386, the appellate court held that the trial court did not abuse its discretion in hearing additional evidence on remand where extraordinary circumstances had arisen subsequent to the court's entry of an earlier Rule 23 order. In that case, the appellate court determined that the trial court had not divided the marital property in "just proportions." The court issued a Rule 23 order in which it stated that upon remandment the trial court should divide the property in equitable and fair proportions. Upon remandment, additional evidence that petitioner had been diagnosed as having cancer was allowed, and

thus, the trial court awarded her maintenance of $758 per month. No maintenance had been awarded in the initial trial.

■ The instant case is distinguishable from *Fuggiti*. In this case, there was no determination by the appellate court that the initial distribution of the marital estate was inequitable. Further, there was uncontradicted testimony at the initial trial that the value of the marital residence was $175,000. In fact, petitioner's attorney agreed that the value of the residence should have been $175,000. Thus, there were no extraordinary circumstances requiring the court to seek additional evidence as to the value of the marital residence. We therefore find that the trial court abused its discretion by allowing additional testimony as to the value of the marital residence.

Respondent next argues that the trial court abused its discretion in crediting petitioner with 100% of the fair rental value of the marital residence. He contends that under section 503(c) of the Illinois Marriage and Dissolution of Marriage Act, he was entitled to reimbursement of the mortgage, insurance and real estate tax payments he made toward the marital residence.

This court also addressed that issue in our Rule 23 order. We noted that because the record did not contain evidence of the fair rental value of the property, the trial court improperly reduced and negated any benefit that respondent received. On remand, the trial court found that the fair market rent for the marital residence from October 1982 through March 1985 was $36,570. The court then determined that respondent's contribution to the marital residence of $41,608 should be reduced by the $36,570 because of his rent-free use of the marital residence.

■ We first note that the divorce occurred on October 22, 1982, and therefore, any payments which respondent made after that period were nonmarital funds to a nonmarital estate. Further, petitioner had co-equal right to tenancy during the period prior to her divorce and until October 22, 1982. She was not entitled to receive rent payments during this period and cannot claim that the initiation of the divorce triggered such a right. Moreover, petitioner has not cited and we have not found any authority for the proposition that the spouse who remains in possession of the marital residence prior to divorce is to be assessed a benefit equivalent to the fair rental value of the residence. Thus, the trial court abused its discretion in granting petitioner credit for the fair rental value of the marital domicile.

■ Respondent finally argues that the trial court abused its discretion in awarding petitioner interest on her share of the marital property. The trial court awarded petitioner interest in the amount of

$2,750. Section 2—1303 of the Illinois Code of Civil Procedure provides in pertinent part:

"Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied or 6% per annum when the judgment debtor is a unit of local government ***. When judgment is entered upon any award, report or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment." Ill. Rev. Stat. 1987, ch. 110, par. 2—1303.

In *In re Marriage of Morris* (1989), 190 Ill. App.. 3d 293, 546 N.E.2d 734, this court awarded interest computed at 9% on a supplemental dissolution of judgment order. The court stated that supplemental judgments are final judgments to which interest attaches as if they were any other final judgment. (190 Ill. App. 3d at 296.) Therefore, the trial court properly awarded petitioner interest on her portion of the marital estate.

We are satisfied that there was no abuse of discretion as to all remaining issues.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed and remanded in part.

Affirmed in part; reversed and remanded in part.

BUCKLEY, P.J., and CAMPBELL, J., concur.